Filed 8/7/18

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, | B280033 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. NA047666) |
| v. | |
| CHARLES MAURICE PIPER, JR., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, William C. Ryan, Judge. Reversed and remanded with directions.

Stephen M. Vasil, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Noah P. Hill and Gary A. Lieberman, Deputy Attorneys General, for Plaintiff and Respondent.

————————————————

# INTRODUCTION

A jury found appellant guilty of evading a pursuing peace officer and being a felon in possession of ammunition. In connection with the evading charge, the jury found not true the allegation that appellant was armed in the commission of the offense. The jury also acquitted appellant of all firearm-related counts, including being a felon in possession of a firearm and carrying a loaded firearm. Appellant was sentenced to two concurrent terms of 25 years to life as a "three-strike" offender.

In the underlying action, the trial court denied appellant's motion under Penal Code section 1170.126 to be resentenced pursuant to the Three Strikes Reform Act of 2012 (Reform Act).[1] The court concluded, after an evidentiary hearing, that the People had proven beyond a reasonable doubt that appellant was "armed with a firearm" during the commission of the offenses targeted in the petition. Appellant contends the court's determination is contrary to the jury's verdict and must be reversed. For the reasons set forth below, we conclude the trial court erred in determining that appellant was ineligible for resentencing. We remand for further proceedings on appellant's resentencing petition.

---

[1] All further statutory citations are to the Penal Code, unless otherwise stated.

2

# FACTUAL BACKGROUND AND PROCEDURAL HISTORY

A. *Convictions and Acquittals*[2]

Shortly after midnight on January 24, 2001, Los Angeles Police Sergeant Danny Contreras effected a traffic stop on Pacific Coast Highway of a car matching the description of one carrying suspects in a recent drive-by shooting. Appellant was driving the vehicle and codefendant Andre Luzano was a passenger. When a backup unit arrived, appellant was directed to exit his vehicle. He responded by asking, "Why are you stopping me? Why are you hassling me?" Appellant then drove away and the two patrol vehicles gave chase. During the ensuing pursuit, appellant drove through a residential neighborhood, slowed down, and then accelerated. Officers did not see any item being thrown from the vehicle. Hours later, a resident of the neighborhood reported finding a .38-caliber handgun in front of his home. No fingerprints were recovered from the handgun. Later in the pursuit, appellant slowed down while on a railway bridge, and officers observed a "dark," "boxy" and "shiny" object, which appeared to be a handgun, fly out the passenger's window and over the edge of the bridge. After searching the area, police recovered a black box containing two live .45-caliber bullets. Appellant eventually stopped the vehicle. Both men fled on foot, but were apprehended. When appellant was discovered, seven live rounds of .45-caliber ammunition fell from his pocket. During the postarrest search of appellant, a live round of .45-caliber ammunition was recovered from his front pants pocket.

---

[2]     The factual background is based on the trial testimony and on our prior unpublished opinion affirming appellant's convictions. (See *People v. Piper* (Oct. 28, 2003, B162352).)

The drive-by shooting targeted the home of Gilbert Montalvo and his girlfriend Jannet Quintana. The shooting left multiple bullet holes in the front window and west wall of the residence, and police recovered five .45-caliber shell casings at the scene. Officer Contreras testified that at an in-field showup, Montalvo identified appellant as the driver of the vehicle involved in the drive-by shooting. However, Montalvo testified that during the showup, he told the police he could not identify either the driver or the passenger of the suspect vehicle, but was pressured to do so. He stated he told the officers that appellant and Luzano were not the suspects he saw, and claimed he signed the police incident report identifying appellant as the driver without being given an opportunity to read the report. Montalvo testified that appellant's vehicle was "very different" -- in terms of color, styling and amount of tinted windows -- from the vehicle that he had seen drive by his home.

On October 31, 2001, appellant and Luzano were charged in a second amended information with shooting at an inhabited dwelling (§ 246; count 1), assault with a firearm on Montalvo and Quintana (§ 245, subd. (a)(2); counts 2 and 3), and discharge of a firearm with gross negligence (§ 246.3; count 4). Appellant was separately charged with being a felon in possession of a firearm (former § 12021, subd. (a)(1); count 5), being a felon in possession of ammunition (former § 12316, subd. (b)(1); count 7), carrying a loaded firearm after suffering a prior conviction (former § 12031, subd. (a)(1); count 8), and evading a pursuing peace officer (Veh. Code, § 2800.2; count 10).[3] The information alleged that

---

[3]    Count 6 (being a felon in possession of a firearm) and count 9 (carrying a loaded firearm) were alleged only against Luzano.

4

appellant committed all the offenses "[o]n or about January 24, 2001." As to count 10 (evading police), the information further alleged that appellant was armed with a firearm in the commission and attempted commission of the offense. Finally, the information alleged that appellant had suffered seven prior serious or violent felony convictions.

On November 5, 2001, a jury convicted appellant of being a felon in possession of ammunition (count 7) and evading a pursuing peace officer (count 10). The jury found not true the allegation that while evading the police, appellant was armed with a handgun. It acquitted appellant of the remaining counts, including being a felon in possession of a firearm and carrying a loaded firearm. Codefendant Luzano was acquitted of all charges.

---

Former section 12021, subdivision (a)(1) (counts 5 and 6) was repealed and reenacted without substantive changes as section 29800, subdivision (a); former section 12316 (count 7) was repealed and reenacted without substantive changes as section 30305, subdivision (a); and former section 12031, subdivision (a)(1) (counts 8 and 9) was repealed and reenacted without substantive change as section 25850, subdivision (a).

Although the second information alleged in count 5 (being a felon in possession of a firearm) that appellant was armed with a .45-caliber handgun, the trial court permitted the prosecutor to amend the information midtrial to allege that appellant was armed with a .38-caliber handgun. As to count 8 (carrying a loaded firearm), the second amended information did not allege the specific handgun. However, the prosecutor explained to the judge, and later argued to the jury, that this count related to the charge that appellant had been carrying a loaded .45-caliber handgun.

In a bifurcated court trial, the trial court found true the prior conviction allegations. The court found appellant had suffered five strikes and sentenced appellant to two concurrent terms of 25 years to life under the Three Strikes law. In an unpublished opinion, this court affirmed the judgment. (See *People v. Piper* (Oct. 28, 2003, B139604).)

B.    *Petition for Recall of Sentence*

In 2012, the electorate enacted the Three Strikes Reform Act (Reform Act) by approving Proposition 36. (*People v. Yearwood* (2013) 213 Cal.App.4th 161, 167-170.) The Reform Act amended the Three Strikes law to provide that absent specified exceptions, an offender with two or more prior strikes is to be sentenced as a two-strike offender unless the new offense also is a strike, that is, a serious or violent felony. (See *ibid*.) The Reform Act also added section 1170.126, which creates a postconviction resentencing proceeding for specified inmates sentenced under the prior version of the Three Strikes law. (*People v. Yearwood*, *supra*, at pp. 167-170.) Under that statute, a defendant sentenced as a three-strike offender may petition for recall of the sentence and for resentencing, subject to certain eligibility criteria. (§ 1170.126, subd. (e).) "The Reform Act's resentencing mechanism has three separate aspects: (1) the initial petition for recall of the sentence, (2) a determination of eligibility, and (3) the court's discretionary decision whether the defendant poses an unreasonable risk of danger to public safety." (*People v. Frierson* (2017) 4 Cal.5th 225, 234 (*Frierson*).)

On January 11, 2013, appellant filed a petition for recall of sentence and resentencing pursuant to section 1170.126. The People opposed the resentencing petition, arguing that appellant was ineligible for resentencing under an exclusion that applies if,

6

"[d]uring the commission of the current offense, [that is, the offense which the resentencing petition targets] the defendant . . . was armed with a firearm or deadly weapon . . . ." (§§ 667, subd. (e)(2)(C)(iii), 1170.12, subd. (c)(2)(C)(iii), 1170.126, subd. (e)(2).)  The parties disputed whether the standard of proof for the ineligibility determination was beyond a reasonable doubt or by a preponderance of the evidence.  On October 31, 2016, the trial court held an evidentiary hearing on appellant's resentencing petition.  On December 5, 2016, the trial court denied the petition with prejudice, concluding that "regardless of whether the correct standard of proof is beyond a reasonable doubt or by a preponderance of the evidence," appellant was ineligible for resentencing because he "was armed with a firearm" during his commission of the target offenses.  This appeal followed.

## DISCUSSION

The key issue before us concerns the circumstances under which a jury's verdict and findings in the petitioner's trial preclude or limit the trial court's eligibility determination under the Reform Act.  On this issue, we draw guidance from *Frierson*, *supra*, 4 Cal.5th 225, and *People v. Arevalo* (2016) 244 Cal.App.4th 836 (*Arevalo*).  In *Frierson*, our Supreme Court discussed the second aspect of a resentencing petition -- the eligibility determination.  After concluding that the People had the burden of persuasion on this issue, the court discussed the standard of proof.  (See *id*. at p. 234.)  The court first noted that the Reform Act applies prospectively to defendants who have not yet been sentenced and retrospectively to petitioners who have already been sentenced.  "'[T]he parallel structure of the Act's amendments to the sentencing provisions and the Act's

resentencing provisions reflects an intent that sentences imposed on individuals with the same criminal history be the same, *regardless of whether they are being sentenced or resentenced.* Both the sentencing scheme and the resentencing scheme provide for a second strike sentence if the current offense is not a serious or violent felony, and they set forth identical exceptions to the new sentencing rules.'" (*Frierson, supra,* 4 Cal.5th at p. 236, quoting *People v. Johnson* (2015) 61 Cal.4th 674, 686 (*Johnson*).) The court reasoned that "the parallel construction of the prospective and retrospective portions of the Reform Act reflects an electoral intent to apply the same standard for proof of ineligibility for second strike sentencing in both contexts." (*Frierson,* at p. 236.) The court rejected the People's argument that a lower standard of proof should apply on resentencing because the case had been "fully litigated." It found that "nothing in the Reform Act's language suggests the electorate contemplated that a lower standard of proof should apply at resentencing to compensate for any potential evidentiary shortcoming at a trial predating the Act." (*Id.* at p. 238.) The court concluded that the People had the burden of proving beyond a reasonable doubt that the petitioner was ineligible for resentencing under the Reform Act. (*Id.* at p. 240, fn. 8.)

In concluding that the standard of proof was beyond a reasonable doubt, the *Frierson* court quoted extensively from *Arevalo.* (See *Frierson, supra,* 4 Cal.5th at pp. 235-236 [noting that defendant's argument for a beyond a reasonable doubt standard mirrors the reasoning in *Arevalo* and that defendant has the "better view"].) In *Arevalo,* following a bench trial, the defendant was found guilty of grand theft auto and driving a vehicle without the owner's consent. He was acquitted of

8

burglary and possession of a firearm charges, and the court found the "armed with a firearm" allegation not true. After being sentenced as a third striker, Arevalo filed a resentencing petition under the Reform Act. (*Arevalo*, *supra*, 244 Cal.App.4th at p. 843.) The trial court denied the petition after concluding that under the preponderance of the evidence standard, Arevalo was "armed with a firearm" during the commission of the grand theft auto. (*Id*. at p. 844.) The appellate court reversed. The court held that the correct standard of proof was beyond a reasonable doubt, as "[u]nder a lesser standard of proof, nothing would prevent the trial court from disqualifying a defendant from resentencing eligibility consideration by completely revisiting an earlier trial, and turning acquittals and not-true enhancement findings into their opposites." This would violate *Johnson*'s "'equal outcomes'" directive. (*Id*. at p. 853.) The appellate court concluded that "[u]nder the applicable beyond a reasonable doubt standard, Arevalo's acquittal on the weapon possession charge and the not-true finding on the allegation of being armed with a firearm, preclude a finding that he is ineligible for resentencing consideration." (*Ibid*.)

Under *Frierson* and *Arevalo*, on a resentencing petition, the trial court may not make an eligibility determination contrary to the jury's verdict and findings. To do so would allow the People, contrary to the Reform Act, to "compensate for any potential evidentiary shortcoming at a trial predating the Act." (*Frierson, supra,* 4 Cal.5th at p. 238.) It also would allow a trial court, contrary to *Johnson*, to "turn[] acquittals and not-true enhancement findings into their opposites." (*Arevalo*, *supra*, 244 Cal.App.4th at p. 853.)

9

Citing *People v. Bradford* (2014) 227 Cal.App.4th 1322 (*Bradford*), respondent argues that the trial court was not constrained by the jury's acquittals or not-true findings. Respondent's reliance on *Bradford* is misplaced.  There, the petitioner had argued that the trial court was precluded from making a determination that he was armed during the commission of the offenses targeted in his resentencing petition, as the prosecution "'neither charged appellant with being armed with a deadly weapon nor was such an enhancement ever found true in relation to any of appellant's current convictions.'"  (*Id.* at p. 1331.)  The appellate court rejected the petitioner's argument, holding that the Reform Act permitted the trial court to make the eligibility determination on evidence found in the record of conviction.  It never addressed the effect of a jury's acquittal or not-true finding on an arming enhancement on the trial court's eligibility determination.

Here, appellant was acquitted of all firearm-related charges, and the jury found not true the allegation that he was "armed" in the commission of the offense of evading the police. Respondent argues that the jury's not-true finding on the arming enhancement does not preclude a determination that appellant was ineligible for resentencing under the "armed" exception in the Reform Act, because the former requires both a facilitative nexus and a temporal nexus, while the latter requires only a temporal nexus.  (See *People v. Cruz* (2017) 15 Cal.App.5th 1105, 1111-1112 [jury's not-true finding on knife use enhancement does not render defendant eligible for resentencing under the Reform Act].)  We agree that as a matter of law, a jury's not-true finding on an arming enhancement does not necessarily preclude a trial court from making an eligibility determination under the Reform

Act that a defendant was armed. In this case, however, the jury's acquittals constituted findings inconsistent with either a facilitative or temporal nexus between appellant and any firearm. As noted, the jury was presented with evidence about only two firearms -- the .38-caliber handgun found in front of a residence and a .45-caliber handgun never recovered but used in the drive-by shooting. With respect to the .45, the jury acquitted appellant of all related charges, including count 8 (carrying a loaded firearm). With respect to the .38, the jury acquitted appellant of count 5 (being a felon in possession of a firearm). All the firearm-related charges encompassed the same time period as the underlying convictions for evading the police and possession of live ammunition, viz., "[o]n or about January 24, 2001." The jury's determinations thus conclusively rejected the claim that appellant was "armed with a firearm" on or about that date. That rejection foreclosed any later finding beyond a reasonable doubt that appellant was "armed with a firearm," either while evading the police or while in possession of live ammunition. Accordingly, appellant was not ineligible for resentencing under the "armed" exception.[4]

Having reversed the trial court's eligibility determination, we remand the matter to the trial court to exercise its discretion whether to deny resentencing to a defendant who poses an unreasonable danger to the public. "In exercising its discretion,

---

[4]     Appellant could not be found "armed" under the doctrine of vicarious arming, as appellant's codefendant was acquitted of all charges. Nor could appellant be found "armed" with "a deadly weapon," as no evidence suggests that during the chase, appellant drove his vehicle in such a manner as to render the vehicle a deadly weapon.

11

the court may consider a wide variety of factors, such as the petitioner's whole criminal history, including 'the extent of injury to victims, the length of prior prison commitments, and the remoteness of the crimes,' [the] petitioner's 'disciplinary record and record of rehabilitation while incarcerated,' and any other relevant evidence."  (See *Frierson, supra*, 4 Cal.5th at p. 240.)  "'[T]he facts upon which the court's finding of unreasonable risk is based must be proven by the People by a preponderance of the evidence.'"  (*Id.* at p. 239, quoting *People v. Buford* (2016) 4 Cal.App.5th 886, 901.)

## DISPOSITION

The order denying appellant's resentencing petition is reversed.  The matter is remanded for further proceedings consistent with this opinion.

CERTIFIED FOR PUBLICATION

MANELLA, Acting P.J.

COLLINS, J.

MICON, J.*

_____

*Judge of the Los Angeles County Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.