Filed 10/7/20  P. v. Laster CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>MICHAEL JULIUS LASTER,<br><br>    Defendant and Appellant. | B298348<br><br>(Los Angeles County<br>Super. Ct. No. KA075090) |

APPEAL from an order of the Superior Court of Los Angeles County, William C. Ryan, Judge.  Affirmed.

Nancy L. Tetreault, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Noah P. Hill, Supervising Deputy Attorney General, and David A. Voet, Deputy Attorney General, for Plaintiff and Respondent.

# INTRODUCTION

In 2007 a jury found Michael Julius Laster guilty of felony driving under the influence of alcohol. The trial court sentenced Laster, who had two prior serious or violent felony convictions within the meaning of the three strikes law, to a prison term of 25 years to life.

In 2013 Laster filed a petition under Proposition 36, the Three Strikes Reform Act of 2012, to recall his sentence and for resentencing as a second-strike offender. (See Pen. Code, § 1170.126.)[1] The superior court denied the petition, ruling that resentencing Laster would pose an unreasonable risk of danger to public safety. Laster appeals, and we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A.   *A Jury Convicts Laster of Driving Under the Influence, and the Trial Court Sentences Him to 25 Years to Life*

In October 2005 a California Highway Patrol officer pulled Laster over after seeing him drive 95 miles per hour on the freeway, weave between lanes and onto the shoulder, and change lanes without signaling.[2] When the officer approached the car, he smelled alcohol and noticed Laster's eyes were bloodshot and watery. The officer administered several field sobriety tests,

---

[1]   Undesignated statutory references are to the Penal Code.

[2]   The facts related to Laster's conviction are from this court's unpublished opinion in Laster's direct appeal, *People v. Laster* (Oct. 19, 2009, B206489) [nonpub. opn.].

which Laster failed. The officer determined Laster was intoxicated and arrested him.

The People charged Laster with a felony count of driving under the influence of alcohol. (Veh. Code, § 23152, subd. (a)).[3] The People alleged Laster had two prior convictions for vehicular manslaughter, each of which arose from the same incident in 1983, that were serious or violent felony convictions within the meaning of the three strikes law. (See former § 192, subd. (3)(a), added by Stats. 1945, ch. 1006, § 1).[4] Laster's initial trial resulted in a deadlocked jury, but after a retrial a second jury convicted him. The trial court sentenced Laster to a prison term of 25 years to life.

B.     *Laster Files a Petition for Resentencing Under Proposition 36*

On November 6, 2012 the voters approved Proposition 36, the Three Strikes Reform Act of 2012. (See *People v. Valencia* (2017) 3 Cal.5th 347, 350.) "Prior to its amendment by [Proposition 36], the Three Strikes law required that a defendant who had two or more prior convictions of violent or serious felonies receive a third strike sentence of a minimum of 25 years to life for any current felony conviction, even if the current

_____

[3]     The People also charged Laster with a misdemeanor count of driving with a license that was suspended for a prior conviction of driving under the influence (Veh. Code, § 14601.2, subd. (a)), to which Laster pleaded no contest.

[4]     In 1984 the Legislature renumbered the subdivisions of section 192. (Stats. 1984, ch. 742, § 1, eff. Aug. 24, 1984.) The current version of subdivision (c)(1) is similar to former subdivision (3)(a).

offense was neither serious nor violent." (*Valencia*, at pp. 353-354; see former § 667, subd. (e)(2)(A), as amended by Stats. 1994, ch. 12, § 1, eff. Mar. 7, 1994; former § 1170.12, subd. (c)(2)(A), added by Prop. 184, § 1, as approved by voters, Gen. Elec. (Nov. 8, 1994).) "Proposition 36 'amended the Three Strikes law with respect to defendants whose current conviction is for a felony that is neither serious nor violent'" so that, "'unless an exception applies, the defendant is to receive a second strike sentence of twice the term otherwise provided for the current felony, pursuant to the provisions that apply when a defendant has one prior conviction for a serious or violent felony.'" (*Valencia*, at p. 354; see §§ 667, subd. (e)(2)(C), 1170.12, subd. (c)(2)(C), amended by Prop. 36, § 4, as approved by voters, Gen. Elec. (Nov. 6, 2012), eff. Nov. 7, 2012.)

Proposition 36 "also enacted a procedure governing inmates sentenced under the former Three Strikes law whose third strike was neither serious nor violent, permitting them to petition for resentencing in accordance with Proposition 36's new sentencing provisions." (*Valencia*, *supra*, 3 Cal.5th at p. 350; see § 1170.126.) In particular, "[a]n inmate who is serving a third strike sentence that would have yielded a second strike sentence under Proposition 36's new sentencing rules 'shall be resentenced' as a second strike offender 'unless the court, in its discretion, determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety.'" (*Valencia*, at p. 354; see § 1170.126, subd. (f).)

In January 2013 Laster filed a petition for resentencing under Proposition 36, contending he qualified for resentencing as a second-strike offender because his conviction for driving under the influence was not for a serious or violent felony. The People

4

admitted Laster was eligible for resentencing under section 1170.126, subdivision (e),[5] but opposed Laster's petition on the ground that resentencing Laster would pose an unreasonable risk of danger to public safety. The People submitted evidence Laster had numerous convictions between 1976 and 2005, in addition to his two manslaughter convictions, including four convictions for driving under the influence (not including the commitment offense). Laster also had a conviction for reckless driving (see Veh. Code, § 23103); two convictions for driving with a suspended or revoked license;[6] a conviction for possessing a firearm as a felon (see former § 12021, subd. (a)(1), as amended by Stats. 1995, ch. 178, § 1); a conviction for possessing cocaine (Health & Saf. Code, § 11350, subd. (a)); and a conviction for falsely personating another (§ 529, subd. (a)).

In his reply, Laster submitted evidence of his conduct in prison, which Laster argued demonstrated he did not pose a risk

---

[5]     An inmate is eligible for resentencing if the inmate's current sentence was not for a serious or violent felony conviction or a conviction for one of the other crimes described in section 667, subdivision (e)(2)(C), or section 1170.12, subdivision (c)(2)(C), and the inmate's prior convictions were not for one of the serious or violent felonies described in section 667, subdivision (e)(2)(C)(iv), or section 1170.12, subdivision (c)(2)(C)(iv). (§ 1170.126, subd. (e); see *People v. Estrada* (2017) 3 Cal.5th 661, 667.)

[6]     One conviction was for driving with a license that was suspended or revoked for a conviction for driving under the influence (Veh. Code, § 14601.2, subd. (a)), and the other was for driving with a license that was suspended or revoked for reasons other than a conviction of driving under the influence (Veh. Code, § 14601.1, subd. (a)).

of danger to public safety. This evidence showed that since 2013 Laster had maintained the lowest possible security classification score for an inmate with a life sentence[7] and that he committed only one serious rule violation while incarcerated, disobeying a guard's order, which was classified as a "Division F" offense, the least serious type of serious rule violation. (See Cal. Code Regs., tit. 15, § 3323.) Laster submitted evidence that between 2013 and 2019 he regularly attended prison group meetings and conferences to treat alcohol abuse, that between 2014 and 2016 he regularly attended group meetings for depression management, and that in 2014 and 2016 he completed courses in anger management. Laster also submitted evidence that in 2010 and 2011 he took some educational courses, that in 2013 he earned a high school diploma, and that in 2016 he completed a course in bible study. Laster also submitted evidence that between 2013 and 2017 he worked in the prison and received positive feedback from his supervisors.

Laster also submitted evidence of his plans if he were released from prison, including that he had been admitted to and planned to attend a residential treatment center for substance abuse. Laster's mother stated she had a place for Laster to live, and several family members submitted letters offering financial and emotional support.

---

[7] "As a general rule, a prisoner's classification score is directly proportional to the level of security needed to house the inmate. For example, prisoners with high classification scores will be sent to the prisons with higher levels of security." (*In re Jenkins* (2010) 50 Cal.4th 1167, 1174; see Cal. Code Regs., tit. 15, § 3375, subd. (d).)

C.    *The Superior Court Denies the Petition*

The superior court denied Laster's petition, ruling that resentencing Laster would pose an unreasonable risk of danger to public safety.  Observing that the case was "not clear-cut," the court stated that, although Laster "appears to have stayed away from alcohol in prison, and has engaged in some rehabilitative programming to address his problems with substance abuse," he "has shown time and again that after being released from incarceration, he drinks alcohol and drives, never remaining in the free community from more than three or four years before reoffending."  The court ruled that Laster's prior convictions, "which occurred over the course of approximately 30 years," showed an "inability on the part of [Laster] to refrain from driving irresponsibly and under the influence" and that "[n]o amount of punishment in the past has appeared to deter [Laster] from reoffending."  The court concluded Laster's prior convictions were "predictive of current dangerousness, despite the fact" that the prior convictions were "remote in time."  Laster timely appealed.

**DISCUSSION**

A.    *Standard of Review*

Section 1170.126, subdivision (f), provides that, if a petitioner is eligible for resentencing under the statute, "the petitioner shall be resentenced . . . unless the court, in its discretion, determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety."  "In exercising its discretion" to determine whether resentencing the petitioner would pose an unreasonable risk of danger, "the court

7

may consider: [¶] (1) [t]he petitioner's criminal conviction history, including the type of crimes committed, the extent of injury to victims, the length of prior prison commitments, and the remoteness of the crimes; [¶] (2) [t]he petitioner's disciplinary record and record of rehabilitation while incarcerated; and [¶] (3) [a]ny other evidence the court, within its discretion, determines to be relevant . . . ." (§ 1170.126, subd. (g).)

"'The facts upon which the court's finding of unreasonable risk is based must be proven by the People by a preponderance of the evidence . . . and are themselves subject to [appellate] review for substantial evidence.'" (*People v. Frierson* (2017) 4 Cal.5th 225, 239; see *People v. Piper* (2018) 25 Cal.App.5th 1007, 1016; *People v. Buford* (2016) 4 Cal.App.5th 886, 899-900; *People v. Superior Court (Kaulick)* (2013) 215 Cal.App.4th 1279, 1301-1305.) However, "[t]he reasons a trial court finds resentencing would pose an unreasonable risk of danger, [and] its weighing of evidence showing dangerousness versus evidence showing rehabilitation, lie within the court's discretion." (*Buford*, at p. 899.) Therefore, we review the superior court's "ultimate determination that resentencing would pose an unreasonable risk of danger" for an abuse of discretion. (*Id.* at pp. 899, 901; see *People v. Williams* (2018) 19 Cal.App.5th 1057, 1062 ["Since section 1170.126 vests the trial court with discretion to determine whether resentencing defendant poses an unreasonable risk to public safety, we review the court's decision under the familiar abuse of discretion standard."]; cf. *People v. Jefferson* (2016) 1 Cal.App.5th 235 [when reviewing a court's decision to deny resentencing under Proposition 47, "[w]e review a dangerousness finding for an abuse of discretion, given that the

court is statutorily required to determine dangerousness 'in its discretion'"].)

B. *The Superior Court Did Not Abuse Its Discretion in Determining That Resentencing Laster Would Pose an Unreasonable Risk of Danger*

The superior court's determination that resentencing Laster would pose an unreasonable risk of danger was based on the court's findings that, although Laster had been incarcerated multiple times, upon his releases Laster continued to drive irresponsibly, including driving under the influence of alcohol. Substantial evidence supported the superior court's findings.

Laster was first convicted of driving under the influence in 1976. In 1983 Laster was involved in a rear-end car accident. While fleeing the scene of that accident, he drove at a speed of almost 90 miles per hour, hit a second car, and killed two of that car's occupants. For this incident Laster was convicted on two counts of vehicular manslaughter, a serious felony if the defendant personally inflicts great bodily injury on a person other than an accomplice (*People v. Marin* (2015) 240 Cal.App.4th 1344, 1350),[8] and the trial court in that case sentenced Laster to a prison term of three years eight months.

In 1990 Laster was convicted of reckless driving. One year later, he was convicted of driving with a suspended or revoked license. In 1996 Laster was convicted of possession of a firearm by a felon and sentenced to a prison term of one year four

---

[8]    In Laster's direct appeal, this court rejected Laster's argument that his prior convictions for vehicular manslaughter were not serious felony convictions for purposes of the three strikes law. (*People v. Laster*, *supra*, B206489.)

9

months. The following year he was convicted of possession of cocaine and sentenced to a prison term of six years. After his release, Laster was convicted of driving under the influence three separate times between 1999 and 2001. In 2007 Laster was again convicted of driving with a license that had been suspended or revoked and convicted once more for driving under the influence. As the superior court commented, Laster never went more than a few years without obtaining a conviction for some type of driving-related offense while out of custody.

Relying on the California Supreme Court's decision in *In re Lawrence* (2008) 44 Cal.4th 1181 (*Lawrence*), Laster argues the superior court could not rely solely on immutable factors— namely, his prior criminal history—to find that resentencing him would pose an unreasonable risk of danger unless the court found a nexus between the immutable factors and Laster's current risk. Laster argues the superior court abused its discretion in denying his petition because the court did not cite "present circumstances" suggesting Laster is currently a danger to public safety.

In *Lawrence* the Supreme Court reviewed the Governor's decision to deny an inmate parole on the ground the inmate represented an unreasonable risk of danger to society. (*Lawrence, supra*, 44 Cal.4th at pp. 1199-1201; see Cal. Code Regs, tit. 15, § 2281, subd. (a) ["Regardless of the length of time served, a life prisoner shall be found unsuitable for and denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison."].) The Supreme Court held that the "Board [of Parole Hearings] or the Governor may base a denial-of-parole decision upon the circumstances of the offense, or upon other immutable facts such as an inmate's criminal history . . . *only* if those facts support the

ultimate conclusion that an inmate *continues* to pose an unreasonable risk to public safety." (*Lawrence*, at p. 1221; see *In re Shaputis* (2008) 44 Cal.4th 1241, 1255 (*Shaputis*).)

Even assuming a similar standard governs the extent to which the superior court may rely on immutable facts when considering a petition under Proposition 36 (see *People v. Buford, supra*, 4 Cal.App.5th at p. 913 ["[a]lthough we decline to decide how and to what extent parole cases inform the decision whether to resentence a petitioner under [Proposition 36] or our review of such a decision, we agree with defendant that the proper focus is on whether the petitioner *currently* poses an unreasonable risk of danger to public safety"]), the superior court did not abuse its discretion. Laster's commitment conviction for driving under the influence was not "an isolated incident" that Laster committed under circumstances "unusual or unlikely to recur." (*Shaputis, supra*, 44 Cal.4th at p. 1259.) Laster's commitment conviction was his fifth for driving under the influence of alcohol, and eighth overall (including his convictions for reckless driving and driving with a suspended or revoked license) related to driving.

Moreover, Laster's prior convictions did not deter him from continuing to drive dangerously. Laster served a prison term of two years, eight months because he killed two people while fleeing the scene of an accident. (See § 1170.126, subd. (g)(1) [court may consider "the extent of injury to victims" in determining whether resentencing petitioner would pose and unreasonable risk of danger].) But this did not stop Laster, when not incarcerated, from continuing to drive dangerously and under the influence of alcohol. It was a reasonable inference from evidence of Laster's criminal history and his life outside of prison that, if released, he would do what he always did when not

11

incarcerated: drink alcohol and drive. (See *People v. Brooks* (2017) 3 Cal.5th 1, 57 ["'Substantial evidence includes circumstantial evidence and any reasonable inferences drawn from that evidence.'"].) The superior court acted within its discretion in ruling Laster's prior history demonstrated he continued to pose an unreasonable risk to public safety. (See *Lawrence, supra*, 44 Cal.4th at p. 1221.)

Laster argues the superior court abused its discretion by failing to give sufficient weight to Laster's participation in substance abuse treatment programs, Laster's low security classification score, and the willingness of Laster's family to support him if he were resentenced. But the superior court did consider the factors suggesting resentencing Laster might not pose a danger to public safety, stating that the case was not "clear-cut." Laster is essentially asking us to reweigh those factors, something we do not do. (*People v. Buford, supra*, 4 Cal.App.5th at p. 899; see *People v. JTH Tax, Inc.* (2013) 212 Cal.App.4th 1219, 1250 ["under an abuse of discretion standard . . . '"[w]e do not reweigh the evidence or substitute our notions of fairness for the trial court's"'"].) The standard is not whether a different superior court, or even this court, may have determined the evidence of rehabilitation outweighed the evidence of dangerousness, but whether the superior court in this case abused its discretion. (See *People v. Erickson* (2018) 30 Cal.App.5th 243, 246 ["The trial court may have decided this case differently. But the court did not abuse its discretion in deciding as it did."].)

In any event, the superior court did not abuse its discretion in ruling that Laster's prior convictions, his prior prison terms, and the devastating impact of his conduct on innocent victims

12

would not prevent him from continuing to drive dangerously and under the influence while not incarcerated and that these concerns outweighed Laster's more recent efforts at rehabilitation. In particular, despite that Laster has been incarcerated since 2007, Laster only began participating in substance abuse treatment programs after he filed his petition for resentencing under Proposition 36 in 2013, suggesting Laster may have been more motivated by the opportunity to obtain a reduced sentence than interested in meaningful rehabilitation.[9] (See *In re Stevenson* (2013) 213 Cal.App.4th 841, 870 [evidence supported the Board of Parole Hearing's decision to deny parole where inmate "had only relatively recently completed a number of self-help programs" even though he had been imprisoned for several years].) In addition, Laster has not had the opportunity to drive dangerously or under the influence of alcohol while incarcerated. (Cf. *People v. Gaston* (1999) 74 Cal.App.4th 310, 315 ["In deciding a defendant's 'prospects' for committing future crimes, the sentence imposed by the trial court is itself a factor, since the defendant presumably will have fewer opportunities to commit crime while in prison"].) While Laster's rehabilitative efforts in prison are relevant, their significance is diminished because there is no indication they would prevent him from continuing past habits once he is in an environment free from restraint. They certainly didn't in the past. (See *Shaputis,*

---

[9]     Laster argues that he did not obtain his current security level and classification score until 2012 and 2013, respectively, after which he was "more able to take prison classes." Laster, however, did not present any evidence suggesting he was unable to participate in substance abuse treatment programs before he obtained his current security level and classification score.

13

*supra,* 44 Cal.4th at p. 1249 [petitioner's prior criminal history and violence supported the Governor's decision to deny parole, even though the petitioner "remained discipline-free throughout his incarceration," had "a long and positive work record," and "ha[d] fully participated in all available" drug, alcohol, and therapy programs].)

C.     *The Superior Court Did Not Violate Laster's Due Process Rights*

Laster argues that, because section 1170.126, subdivision (f), states the court "shall" resentence an eligible petitioner unless the court determines he or she poses an unreasonable risk of danger, Laster has a liberty interest in resentencing as a second-strike offender. Laster argues due process requires that, before the court denies a petition under Proposition 36 based on a finding the petitioner poses an unreasonable risk of danger, there must be "a rational nexus between the inmate's record and the court's conclusion of dangerousness . . . based on a balancing of all of the factors in the petitioner's record."

Numerous courts, including the Supreme Court, have rejected similar arguments that section 1170.126 gives inmates an entitlement to, or presumption in favor of, resentencing. (See *People v. Perez* (2018) 4 Cal.5th 1055, 1064 ["[b]y its terms, [section 1170.126] does not create an entitlement to resentencing," nor does it "automatically reduce, recall, or vacate any sentence by operation of law"]; *People v. Buford, supra,* 4 Cal.App.5th at p. 902 ["we reject the notion voters must have intended there to be a presumption in favor of resentencing or that courts have only limited discretion to deny resentencing"];

14

*People v. Superior Court (Kaulick), supra*, 215 Cal.App.4th at p. 1304 ["The retrospective part of [Proposition 36] is not constitutionally required, but an act of lenity on the part of the electorate. It does not provide for wholesale resentencing of eligible petitioners."].) In any event, even assuming Laster has a liberty interest in resentencing under Proposition 36, he has not shown the superior court violated his due process rights by denying his petition. Even if, as Laster contends, the superior court had to find "a rational nexus between [Laster's] record and the court's conclusion of dangerousness" to satisfy due process, the superior court made such a finding.

## DISPOSITION

The order is affirmed.


SEGAL, J.


We concur:


PERLUSS, P. J.


DILLON, J.*

*     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.